IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| KIMBERLY SNIDER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:15CV730 |
| | ) | |
| CAROLYN W. COLVIN, | ) | |
| Acting Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE

Plaintiff, Kimberly Snider, brought this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), as amended (42 U.S.C. §§ 405(g) and 1383(c)(3)), to obtain judicial review of a final decision of the Commissioner of Social Security denying her claims for Disability Insurance Benefits and Supplemental Security Income under, respectively, Titles II and XVI of the Act. The parties have filed cross-motions for judgment, and the administrative record has been certified to the Court for review.

I.     PROCEDURAL HISTORY

Plaintiff protectively filed her applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income Benefits ("SSI") on November 7, 2011, alleging a disability onset date of January 1, 2010. (Tr. at 13, 165-74.)[1] Her applications were denied initially (Tr. at 59-76, 96-103) and upon reconsideration (Tr. at 77-95, 105-13). Thereafter, Plaintiff

---

[1] Transcript citations refer to the Sealed Administrative Transcript of Record [Doc. #10].

requested a hearing before an Administrative Law Judge ("ALJ") (Tr. at 114-15), which she attended on January 16, 2014, along with her attorney (Tr. at 13). An impartial vocational expert also appeared and testified at the hearing. (Id.) The ALJ ultimately issued a decision finding that Plaintiff was not disabled under the meaning of the Act (Tr. at 24), and on July 9, 2015, the Appeals Council denied Plaintiff's request for review, thereby making the ALJ's conclusion the Commissioner's final decision for purposes of judicial review (Tr. at 1-5).

## II. LEGAL STANDARD

Federal law "authorizes judicial review of the Social Security Commissioner's denial of social security benefits." Hines v. Barnhart, 453 F.3d 559, 561 (4th Cir. 2006). However, "the scope of [the] review of [such an administrative] decision . . . is extremely limited." Frady v. Harris, 646 F.2d 143, 144 (4th Cir. 1981). "The courts are not to try the case de novo." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). Instead, "a reviewing court must uphold the factual findings of the ALJ [underlying the denial of benefits] if they are supported by substantial evidence and were reached through application of the correct legal standard." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal brackets omitted).

"Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Hunter v. Sullivan, 993 F.2d 31, 34 (4th Cir. 1993) (quoting Richardson v. Perales, 402 U.S. 389, 390 (1971)). "It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001) (internal citations and quotation marks omitted). "If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is substantial evidence." Hunter, 993 F.2d at 34 (internal quotation marks omitted).

2

"In reviewing for substantial evidence, the court should not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the [ALJ]." Mastro, 270 F.3d at 176 (internal brackets and quotation marks omitted). "Where conflicting evidence allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the ALJ." Hancock, 667 F.3d at 472. "The issue before [the reviewing court], therefore, is not whether [the claimant] is disabled, but whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996).

In undertaking this limited review, the Court notes that in administrative proceedings, "[a] claimant for disability benefits bears the burden of proving a disability." Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). In this context, "disability" means the "'inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.'" Id. (quoting 42 U.S.C. § 423(d)(1)(A)).[2]

"The Commissioner uses a five-step process to evaluate disability claims." Hancock, 667 F.3d at 472 (citing 20 C.F.R. §§ 404.1520(a)(4); 416.920(a)(4)). "Under this process, the

---

[2] "The Social Security Act comprises two disability benefits programs. The Social Security Disability Insurance Program . . . provides benefits to disabled persons who have contributed to the program while employed. The Supplemental Security Income Program . . . provides benefits to indigent disabled persons. The statutory definitions and the regulations . . . for determining disability governing these two programs are, in all aspects relevant here, substantively identical." Craig, 76 F.3d at 589 n.1 (internal citations omitted).

3

Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to her past relevant work; and (5) if not, could perform any other work in the national economy." Id.

A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. For example, "[t]he first step determines whether the claimant is engaged in 'substantial gainful activity.' If the claimant is working, benefits are denied. The second step determines if the claimant is 'severely' disabled. If not, benefits are denied." Bennett v. Sullivan, 917 F.2d 157, 159 (4th Cir. 1990).

On the other hand, if a claimant carries his or her burden at each of the first two steps, and establishes at step three that the impairment "equals or exceeds in severity one or more of the impairments listed in Appendix I of the regulations," then "the claimant is disabled." Mastro, 270 F.3d at 177. Alternatively, if a claimant clears steps one and two, but falters at step three, i.e., "[i]f a claimant's impairment is not sufficiently severe to equal or exceed a listed impairment, the ALJ must assess the claimant's residual function[al] capacity ('RFC')." Id. at 179.[3] Step four then requires the ALJ to assess whether, based on that RFC, the claimant can

---

[3] "RFC is a measurement of the most a claimant can do despite [the claimant's] limitations." Hines, 453 F.3d at 562 (noting that pursuant to the administrative regulations, the "RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis . . . [which] means 8 hours a day, for 5 days a week, or an equivalent work schedule" (internal emphasis and quotation marks omitted)). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory, or skin impairments)." Hall, 658 F.2d at 265. "RFC is to be determined by the ALJ only after [the ALJ] considers all relevant evidence of a claimant's impairments and any related symptoms (*e.g.*, pain)." Hines, 453 F.3d at 562-63.

4

"perform past relevant work"; if so, the claimant does not qualify as disabled. Id. at 179-80. However, if the claimant establishes an inability to return to prior work, the analysis proceeds to the fifth step, which "requires the Commissioner to prove that a significant number of jobs exist which the claimant could perform, despite [the claimant's] impairments." Hines, 453 F.3d at 563. In making this determination, the ALJ must decide "whether the claimant is able to perform other work considering both [the claimant's RFC] and [the claimant's] vocational capabilities (age, education, and past work experience) to adjust to a new job." Hall, 658 F.2d at 264-65. If, at this step, the Government cannot carry its "evidentiary burden of proving that [the claimant] remains able to work other jobs available in the community," the claimant qualifies as disabled. Hines, 453 F.3d at 567.

III. DISCUSSION

In the present case, the ALJ found that Plaintiff had not engaged in "substantial gainful activity" since her alleged onset date. Plaintiff therefore met her burden at step one of the sequential analysis. At step two, the ALJ further determined that Plaintiff had the following severe impairments: fibromyalgia and myofacscial pain; small fiber neuropathy; chronic pain syndrome; migraine headaches; history of uterine fibroids and bilateral ovarian cysts, status post total hysterectomy; and obesity. (Tr. at 15.) However, the ALJ found at step three that none of these impairments met or equaled a disability listing. (Tr. at 17.) Therefore, the ALJ assessed Plaintiff's RFC and determined that she could perform light work with myriad postural, environmental, and mental restrictions. Specifically, the ALJ found that Plaintiff retained the ability to

> sit stand or walk six hours in an eight hour day with normal breaks. The claimant can occasionally balance, stoop, crouch, and climb ladders, ropes or

5

scaffolds. She should avoid concentrated exposure to operational control of moving machinery and working at unprotected heights. Due to pain and the reduction of her ability to concentrate, she is unable to perform complex detailed functions, but is limited to simple, routine and repetitive tasks in a low stress job, defined as having only occasional decision making and occasional changes in the work setting. She would be able to respond appropriately to frequent interaction with the public, and could have frequent interaction with coworkers and supervisors despite her pain.

(Tr. at 17-18.) At step four of the analysis, the ALJ determined that the demands of Plaintiff's past relevant work as a fast food worker did not exceed her RFC. (Tr. at 22.) The ALJ also made an alternative step five determination, finding that, given her age, education, work experience, and RFC, Plaintiff could perform other jobs that exist in significant numbers in the national economy. (Tr. at 22-23.) Accordingly, the ALJ concluded that Plaintiff was not disabled under the Act. (Tr. at 23.)

Plaintiff now argues that the ALJ erred in failing to sufficiently account for Plaintiff's mild concentration difficulties when formulating her RFC. (Pl.'s Br. [Doc. #13] at 4.) Plaintiff submits that, although labeled as "mild" at step two of the sequential analysis, the ALJ's findings "concerning [Plaintiff's] reduced ability to concentrate, considered along with [her] testimony, [are] akin to finding moderate limitations in concentration, persistence and pace." (Id. at 6.) Accordingly, Plaintiff urges remand under Mascio v. Colvin, 780 F.3d 632 (4th Cir. 2015) "to allow [the ALJ] to further account for what impact [Plaintiff's] limitations in concentration would have on her ability to sustain full time work in competitive employment." (Id.)

In Mascio, the Fourth Circuit addressed, among other issues, the question of whether and how moderate limitations in concentration, persistence, and pace found at step two must be accounted for in the RFC assessment. 780 F.3d at 638. The Court specifically held that

6

"an ALJ does not account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work." Id. (quotation omitted). This is because "the ability to perform simple tasks differs from the ability to stay on task. Only the latter limitation would account for a claimant's limitation in concentration, persistence, or pace." The Fourth Circuit further noted that

> [p]erhaps the ALJ can explain why Mascio's moderate limitation in concentration, persistence, or pace at step three does not translate into a limitation in Mascio's residual functional capacity. For example, the ALJ may find that the concentration, persistence, or pace limitation does not affect Mascio's ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert. But because the ALJ here gave no explanation, a remand is in order.

Id. (internal citation omitted).

In the present case, the ALJ noted at step two of the sequential analysis that Plaintiff's "medically determinable mental impairment of depression does not cause more than minimal limitation in [her] ability to perform basic mental work activities and is therefore nonsevere." (Tr. at 16.) Moreover, with regard to concentration, persistence, or pace, the ALJ specifically found as follows:

> Treatment records indicate that the claimant had no impairment of long-term memory or impairment of short-term memory. However, she often indicated that she had difficulty concentrating. At the hearing[,] the claimant reported that she did not fill out important papers by herself because it was hard for her to concentrate. The claimant also reported that she was responsible for taking her medications and did not need reminders to do so. As such, the undersigned finds that the evidence of record[] supports no more than mild limitations with regard to concentration, persistence or pace.

(Id.) The ALJ ultimately chose to include limitations related to Plaintiff's concentration difficulties in her RFC. Specifically, the ALJ found that, "[d]ue to pain and the reduction of her ability to concentrate, [Plaintiff] is unable to perform complex detailed functions, but is

7

limited to simple, routine and repetitive tasks in a low stress job, defined as having only occasional decision making and occasional changes in the work setting." (Tr. at 17.) In making this finding, the ALJ noted that, "[b]y the claimant's own admission, she did not have any problems with regard to depression[,] and her restrictions came only from her physical problems," including pain and side effects of her pain medications. (Tr. at 21, 22.)

Plaintiff now contends that her reduced ability to concentrate, as described in the ALJ's decision, is more akin to a moderate, rather than a mild, limitation in concentration, persistence, or pace. She further argues that the ALJ should be held to the strictures of <u>Mascio</u> in linking these difficulties to specific RFC findings. Plaintiff's argument to this effect identifies no relevant evidence the ALJ failed to consider in concluding that Plaintiff's concentration limitations were "no more than mild." (<u>Compare</u> Tr. at 16; Pl.'s Br. at 5.) Moreover, Plaintiff does not appear to argue that the relevant evidence or the ALJ's analysis of it was somehow insufficient to support her step two finding regarding Plaintiff's concentration limitations. (Pl.'s Br. at 5-6.) Instead, Plaintiff essentially asks the Court to re-weigh the evidence and come to a different conclusion than the ALJ. As made clear above, however, it is not the function of this Court to re-weigh the evidence or reconsider the ALJ's determinations if they are supported by substantial evidence. Thus, the issue before the Court is not whether a different fact-finder could have drawn a different conclusion, or even "whether [the claimant] is disabled," but rather, "whether the ALJ's finding that [the claimant] is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law." <u>Craig</u>, 76 F.3d at 589. Here, the ALJ's finding of "mild" limitations in concentration, persistence, and pace is supported by substantial evidence, as set

8

out in the ALJ's decision and as noted above, and Plaintiff points to nothing indicating that the ALJ failed to satisfy this standard in this case.

Moreover, to the extent Plaintiff cites to her hearing testimony regarding her concentration difficulties, the ALJ explicitly considered that testimony, including the extent to which Plaintiff's pain made it difficult for her to focus and concentrate, as well as her testimony that her medications often made her tired and sleepy. (Tr. at 18, 41-42.) The ALJ concluded that her "reports of severe pain, and side effects of medications would effectively reduce her ability to concentrate and as such she is limited to the performance of unskilled work activity, with only occasional changes and occasional decision making." (Tr. at 21-22.) Thus, the ALJ specifically took Plaintiff's testimony into account in determining Plaintiff's RFC, including with respect to her ability to concentrate. The ALJ then explicitly accounted for Plaintiff's mild concentration limitations in the RFC by finding that "[d]ue to pain and the reduction of her ability to concentrate, she is unable to perform complex detailed functions, but is limited to simple, routine and repetitive tasks in a low stress job, defined as having only occasional decision making and occasional changes in the work setting." (Tr. at 17.) Plaintiff does not contend, under Mascio or otherwise, that the RFC in this case (1) inherently conflicts with the ALJ's "mild" step two finding or (2) fails to build a "logical bridge" linking the limitations in question with Plaintiff's mild concentration difficulties, and no such issues are apparent in the record before the Court.[4] Accordingly, substantial evidence supports the RFC in the present case.

---

[4] Plaintiff argues that the ALJ "actually found significant reduction in [Plaintiff's] ability to concentrate in her RFC finding and later in her explanation," which Plaintiff contends reflected an implicit finding of moderate concentration limitations at step two. (Pl.'s Br. at 6.) This argument essentially relies on two competing contentions: Plaintiff asserts first that (1) the ALJ's RFC assessment reflects moderate concentration limitations

Because the ALJ adequately explained her determination and the basis for that determination, and because that determination is supported by substantial evidence in the record, there is no basis to remand this case for further proceedings.

IT IS THEREFORE RECOMMENDED that the Commissioner's decision finding no disability be AFFIRMED, that Plaintiff's Motion for Judgment on the Pleadings [Doc. #12] be DENIED, that Defendant's Motion for Judgment on the Pleadings [Doc. #14] be GRANTED, and that this action be DISMISSED with prejudice.

This, the 20th day of October, 2016.

    /s/ Joi Elizabeth Peake
United States Magistrate Judge

---

while (2) simultaneously asserting that the same RFC failed to comply with Mascio in reflecting moderate concentration limitations. However, this analysis is circular at best, and essentially asks the Court to conclude that the RFC erroneously fails to include sufficient limitations on Plaintiff's ability to concentrate because it reflects limitations on Plaintiff's ability to concentrate. In any event, as set out above, the Court finds that the ALJ considered all of the evidence regarding Plaintiff's ability to concentrate, made specific findings as to Plaintiff's limitations as a result of the reduction in her ability to concentrate, and included those specific limitations, on that basis, in formulating the RFC and in questioning the Vocational Expert.